UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 17-4981(DSD/FLN)

Rust Consulting, Inc.

       Plaintiff,

v.                                                **ORDER**

Schneider Wallace Cottrell
Konecky Wotkyns, LLP,

       Defendant.

Michael R. Cunningham, Esq., Amy E. Erickson, Esq. and Gray Plant Mooty, 80 South 8th Street, Suite 500, IDS Center, Minneapolis, MN 55402, counsel for plaintiff.

Kyle G. Bates, Esq. and Schneider Wallace Cottrell Konecky Wotkyns, LLP, 2000 Powell Street, Suite 1400, Emeryville, CA 94608, counsel for defendant.

Robert K. Shelquist, Esq. and Lockridge Grindal Nauen PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, counsel for defendant.

This matter is before the court upon the motion to dismiss or transfer venue by defendant Schneider Wallace Cottrell Konecky Wotkyns LLP. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is denied.

**BACKGROUND**

This contract dispute arises out of defendant Schneider Wallace's alleged failure to pay plaintiff Rust Consulting, Inc. for rendered services. In 2011, Schneider Wallace, a law firm based in California, and Rust, a Minnesota consulting services

company, entered into a Master Services Agreement in which Rust agreed to perform services for Schneider Wallace relating to certain mass tort actions. Compl. ¶¶ 1-3; Blake Aff. Ex. A.[1] The agreement provides that any claims arising from or in connection to the agreement are governed by Minnesota law. Blake Aff. Ex. A ¶ 11. From 2011 to 2013, Rust provided client intake services, project consulting, call center services, data management, medical record collection and review, client portal design and maintenance, forms processing, and reporting services for Schneider Wallace in connection with nine separate tort cases. Blake Aff. ¶¶ 5, 16. Most of this work was performed by Rust's employees located in Minnesota. Id. ¶ 17.

Rust claims that, from April 2012 through December 2013, it sent invoices to Schneider Wallace for its services totaling $323,756.22 and that Schneider Wallace has failed to pay. Compl. ¶¶ 8-9. Rust also alleges that it is entitled to a per-claim fee of $2,500 for each resolved claim in the relevant mass tort actions. Id. ¶¶ 10-12.

On October 9, 2017, Rust filed suit in Hennepin County court alleging breach of contract, account stated, quantum meruit, and accounting. Schneider Wallace timely removed and now moves to

---

[1] Schneider Wallace attempts to call into doubt the authenticity of the copy of the Master Services Agreement attached to the Blake affidavit, suggesting that this is not the controlling agreement. But Schneider Wallace provides no evidence in support of its assertion, nor does it point to any specific inaccuracies.

dismiss for lack of personal jurisdiction, for failure to state a claim, and for improper venue and, in the alternative, to transfer venue to the Northern District of California.

## DISCUSSION

**I. Personal Jurisdiction**

    **A.  Standard of Review**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant. Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). In the absence of an evidentiary hearing, a court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (citation and internal quotation marks omitted). Because the Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," the court need only consider due process requirements. Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." Romak, 384 F.3d at 984. "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court" here. Coen, 509 F.3d at 905 (citation and internal quotation marks omitted).

A defendant's contacts with the forum state can establish personal jurisdiction under either general or specific jurisdiction. General jurisdiction is present when, regardless of the cause of action, a defendant's "affiliations with the [forum] State are so continuous and systematic as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014) (internal quotation marks omitted)(quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). A forum state has specific jurisdiction when the cause of action "arise[s] out of" or "relate[s] to" a defendant's activities within that state and when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 474-75 (1985) (citation and internal quotation marks omitted).

Under either analysis, the Eighth Circuit considers five factors in determining whether personal jurisdiction exists: "(1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts; and to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties." Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 (8th Cir. 1995).

In breach of contract cases, courts determine whether a defendant purposefully availed itself of the forum state by considering the prior negotiations, contemplated future consequences, and terms of the contract, and the parties' actual course of dealings. Morris v. Barkbuster, Inc., 923 F.2d 1277, 1283 (8th Cir. 1991)(quoting Burger King, 471 U.S. at 479)).

In weighing the quality and quantity of a defendant's contacts with the forum state, courts have considered whether the defendant solicited a business relationship with a company incorporated in the forum state, the frequency of correspondence sent by the defendant to the forum state, whether the contract contains a choice-of-law provision that specifies the forum state's law, and whether the contract required the defendant to remit payment to an address in the forum state. See Creative Calling Sols., Inc. v. LF Beauty LTD, 799 F.3d 975, 980-81 (8th Cir. 2015); K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 593-95 (8th Cir. 2011); Digi-

Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 523 (8th Cir. 1996); K-Tel Int'l, Inc. v. Tristar Prods., Inc., 169 F. Supp. 2d 1033, 1041 (D. Minn. 2001).

### B. Sufficiency of Contacts

The court agrees with Schneider Wallace that it is not subject to the court's general jurisdiction because its contacts with Minnesota are not so substantial that it would be at home in the state. See Daimler, 134 S. Ct. at 761-62 (holding that defendant was not subject to general personal jurisdiction where it was neither incorporated in the state or had its principal place of business there). The court finds, however, that it is subject to specific personal jurisdiction.

In arguing that the court does not have specific personal jurisdiction, Schneider Wallace relies heavily on the fact that the contract was negotiated in California. See Graham Decl. ¶¶ 3-6 (stating that members of Rust traveled to San Francisco on several occasions to negotiate the terms of the contract). It also appears, however, that some of the negotiations took place by emails, telephone calls, and faxes to and from Minnesota. Blake Aff. ¶ 10.

The contract contemplated that Rust would provide a variety of client intake and data management services related to Schneider Wallace's mass tort litigation. Although the data created by Rust was accessed via a client portal in California, Graham Decl. ¶ 6,

the performance of the contract - such as client intake and data management - was physically performed in Minnesota. Blake Aff. Ex. ¶ 17. Indeed, Peter Schneider, on behalf of Schneider Wallace, along with representatives of other law firms, traveled to Minnesota from January 24 to January 26, 2011, to assist with implementing the mass tort project and training Rust employees. Id. ¶ 13. Over the course of the project, Rebecca Blake, the senior project administrator at the time, was in frequent contact with individuals at Schneider Wallace. Id. ¶ 15. Further, the contract contains a choice-of-law provision specifying Minnesota law and requires Schneider Wallace to send payment to Rust at a Minnesota address. Blake Aff. Ex. A, at A8-A9. Finally, because these contacts concern the formation and performance of the contract at issue, they are directly related to the causes of action alleged in the complaint.[2]

These contacts are substantive and purposeful such that Schneider Wallace should have "reasonably anticipate[d] out-of-state litigation"; they are not "random, fortuitous, or attenuated." Burger King, 471 U.S. at 474-75 (citations and internal quotation marks omitted). As a result, Schneider Wallace

---

[2] Schneider Wallace argues that the breach-of-contract action is unconnected to Minnesota because the alleged decision to breach any contract with Rust would have been made in California. This argument is wholly without merit. If true, any defendant could avoid out-of-state litigation by simply making the decision to breach a contract in their home state.

is subject to the court's personal jurisdiction.

**III. Improper Venue**

Schneider Wallace also argues that Minnesota is an improper venue under 28 U.S.C. § 1391. But it is well established that § 1391 does not apply to removed actions - it only applies to actions originally filed in federal court. Rather, the venue of removed actions is governed by 28 U.S.C. § 1441(a). See Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665-66 (1953) ("[Section] 1391 has no application to this case because this is a removed action. The venue of removed actions is governed by 28 U.S.C. § 1441(a)."); see also Toomey v. Dahl, 63 F. Supp. 3d. 982, 988 (D. Minn. 2014) (collecting cases). Section 1441(a) expressly provides that venue is proper in the "district court of the United States for the district ... embracing the place where such action is pending." Because the action was removed from Hennepin County, venue in the District of Minnesota is proper.

**V.   Failure to State a Claim**

Schneider Wallace also moves to dismiss the complaint for failure to state a claim.

   **A.   Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim.  Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

**B.  Sufficiency of Allegations**

Schneider Wallace first argues that the allegations in the complaint are not sufficiently detailed to give rise to a plausible claim.  The court disagrees.  The complaint alleges that Rust and Schneider Wallace entered into a contract in March 2011, under which Schneider Wallace agreed to pay Rust for consulting services, call center services, data management services, claims intake, client portal design and maintenance, forms processing, and reporting services for Schneider Wallace's mass tort litigation. Compl. ¶¶ 3-4.  It further alleges that Rust performed these services for Schneider Wallace from April 2011 to November 2013 and sent Schneider Wallace invoices totaling $323,756.22.  Id. ¶¶ 5-6. Finally, it claims that Schneider Wallace failed to pay Rust for

the services performed as agreed to under the contract.  Id. ¶ 8. The court finds that these allegations are sufficiently detailed to give rise a plausible claim for breach of contract, account stated, quantum meruit, and accounting.[3]

Schneider Wallace next contends that Rust has failed to plead an essential element of its breach of contract claim, namely, that Rust satisfied any conditions precedent.  See Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co., 848 N.W.2d 539, 543 (Minn. 2014) (citation and internal quotations marks omitted) ("[In Minnesota,] the elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant.").  Again, Schneider Wallace's argument is without merit.  As pleaded in the complaint, the contract requires Schneider Wallace to pay Rust for work Rust performed.  The complaint sufficiently alleges that Rust completed the work, but Schneider Wallace failed to pay.[4]  Nothing more is required to plead a breach of contract claim.  As a result, the

---

[3] The fact that Rust did not attach a copy of the contract to its complaint is not fatal.  Schneider Wallace cites to no case, and the court can find none, that requires the plaintiff to attach a copy of the contract to the complaint in a breach-of-contract action.

[4] Schneider Wallace seems to suggest that Rust is not entitled to payment because Rust did not fully perform under the contract. But, even if true, it does not alter the court's analysis because the court must accept as true the facts as alleged in the complaint.

10

court denies the motion to dismiss on this basis.

**VI. Venue**

**A.   28 U.S.C. § 1406**

Schneider Wallace argues that the court should dismiss or transfer the case to the North District of California under 28 U.S.C. § 1406. Section 1406 requires the court to dismiss or transfer a case if it was filed in the wrong venue. As discussed above, venue in this district is proper. Therefore, the court will not dismiss or transfer the case under § 1406.

**B.   28 U.S.C. § 1404**

Alternatively, Schneider Wallace contends that the case should be transferred to the Northern District of California under 28 U.S.C. § 1404.

Under § 1404(a), a court may at its discretion transfer a case to any other district where the case could have been brought. In determining whether transfer is appropriate, a court considers "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). These factors, however, are not exhaustive, and courts must make a "case-by-case evaluation of the particular circumstances at hand." Id. Schneider Wallace bears the burden of showing that Rust's choice of forum is inconvenient because federal courts generally give "considerable deference to a plaintiff's choice of forum." Id. at

11

695.

### 1. Convenience of Parties and Witnesses

Schneider Wallace argues that the Northern District of California is a more convenient forum because the actual performance or non-performance of the contract occurred there. The court is not persuaded. Other than accessing the client portal form California, it appears that the performance of the contract largely occurred in Minnesota. Employees, located in Minnesota, contacted potential plaintiffs, obtained HIPPA release forms, designed and maintained a web-based portal, and provided call center services. Moreover, the work was supervised and coordinated by Rust in Minnesota.

Schneider Wallace next argues, without specificity, that "the majority of key witnesses are ... located in California." Def.'s Supp. Mem. at 23. But Schneider Wallace cannot simply rely on vague assertions to meets its burden, rather it must "clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." Graff v. Quest Commc'ns Corp., 33 F. Supp. 2d 1117, 1122 (D. Minn. 1999); see also Walen v. Hansen, 933 F.2d 1390, 1396 (8th Cir. 1991)("[T]he district court must examine the materiality and importance of the anticipate witnesses' testimony and them determine their accessibility and convenience to the forum. ... The burden is on the defendants to provide these facts ....").

Schneider Wallace has provided no such information.  Accordingly, it has failed to show that transfer would be in the interest of the parties or the witnesses.

Because the underlying facts of this dispute, namely, whether Rust fully performed under the contract and is entitled to payment, largely occurred in Minnesota, the court finds that the resolution of this case will depend on evidence and witnesses located in Minnesota.  As a result, the convenience of the parties and witnesses weighs against transfer.

### 2. Interests of Justice

The interests of justice typically involve considerations of "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law[s] issues, and (7) the advantages of having a local court determine questions of local law."  Terra Int'l, Inc., 119 F.3d at 696.

In support, Schneider Wallace only argues that "the interests of justice generally support transfer."  Def.'s Supp. Mem. at 23. Again, the court finds that such conclusory statements are insufficient.  The court agrees with Rust that the plaintiff's choice of forum and the advantage of having a court in Minnesota

determine questions of Minnesota law weigh against transfer.[5]  As a result, the court will deny the motion to transfer.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion to dismiss or transfer [ECF No. 13] is denied.

Dated: March 9, 2018

s/David S. Doty<br>
David S. Doty, Judge<br>
United States District Court

---

[5] The other factors are either neutral, inapplicable, or were not addressed by either party.