## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Rust Consulting, Inc. | Court File No. 17-cv-4981 DSD/FLN |
| Plaintiff/Counterclaim-Defendant, | Hon. David S. Doty<br>Judge Presiding |
| v. | Hon. Tony N. Leung<br>Magistrate Judge Presiding |
| Schneider Wallace Cottrell Konecky Wotkyns LLP, | |
| Defendant/Counterclaim-Plaintiff. | |

## SCHNEIDER WALLACE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.    There is no dispute that Rust's execution was an express condition precedent.

Rust argues "the party seeking to enforce a written agreement need not have signed the agreement if [the party] agreed to the contract and acted in conformity therewith." *Taylor Inv. Corp. v. Weil*, 169 F.Supp.2d 1046, 1056 (D.Minn. 2001) (citing *Poser v. Abel*, 510 N.W.2d 224, 228 (Minn.Ct.App. 1994)). This is not applicable here, where there is no dispute that execution was a condition precedent.

Rust does not dispute that its executive officer, David Holland, **admitted under oath** that "under the plain reading" of the Master Services Agreement and its Appendices (collectively, "MSA"), same **would not be effective until Rust signed the agreement**. *See* Doc. 63 at 10-12; Doc. 65 at 21:1-23:1.

Rust's former Senior Vice President, Elizabeth Graham, who Rust cites as being the primary point person regarding Schneider Wallace's engagement with Rust, *see* Doc. 79 at 5, also agrees that "[i]t was an express condition precedent that the final agreement be signed before it was to be effective. **In other words, Rust knew that it was required to sign the MSA and Statement of Work in order for the agreement to be valid and enforceable**." *See* Exhibit 1, at ¶4 (emphasis added). Ms. Graham explains that the reason Rust never executed the MSA was based upon, in part, her "concern[] that Rust did not have the ability to adequately perform all of the functions that were promised to Schneider Wallace[.]" *See* Exhibit 1, at ¶5.

This testimony by Rust's then-executive officers irrefutably shows that Rust's execution of the MSA was a condition precedent, and that Rust understood as much from the beginning of the relationship. Rust further admits that it never signed the MSA. Accordingly, there is no fact issue that the unexecuted MSA is not a valid and enforceable written agreement.

*Taylor* is distinguishable because there, the "must be executed" language was included as a protection for one party but not the other. *Taylor*, 169 F.Supp.2d at 1056. The relevant clause in *Taylor* reflected that: "the failure of a Geac officer to execute the agreement prohibits its enforcement **against Geac**, but that failure to provide Taylor with an executed copy of the agreement does not abrogate Taylor's obligations under the contract." *Id.* There is no such one-sided protective language in the MSA; it was unconditional in its requirement that *both* parties sign the MSA before it would become effective. Therefore, the clause was for the protection of *both* parties.

Rust also attempted to distinguish from *Asbestos Products, Inc.*, 235 N.W.2d 807 (Minn. 1975) and *Little Otters of Love*, 724 Fed.App'x 498 (8th Cir. 2018), by noting that in both cases the court found the parties' agreements were valid and enforceable. The underlying rule gleaned from those cases, that there is no contract until the condition precedent of execution is completed, remains controlling here. The distinguishing fact in those cases was the writings were predicated upon execution of *future* written agreements between the parties. *Asbestos*, 235 N.W.2d at 809 ("the mere reference to a future contract in writing will not negative the existence of a present, binding contract."); *Little Otters*, 724 Fed.App'x at 501 (same). That "future writing" distinction is absent here where the MSA, if executed, would have "embodied the entire agreement between the parties[.]" *See* Doc. 35-1 at 38, sec. 18.

The longstanding rule controls: a contract cannot arise without performance of condition precedent. *Aslakson v. Home Sav. Ass'n*, 416 N.W.2d 786, 789 (Minn.Ct.App. 1987). Rust's officers admit execution was a condition precedent to the MSA. Rust admits that it did not execute the MSA. Because there is no genuine issue of fact, summary judgment is appropriate.

## II.   The parties did not act in conformity with the MSA.

Rust argues that the parties acted in conformity with the MSA, and therefore the condition precedent was waived. This is untrue, as evidenced by Schneider Wallace rejecting and refusing to pay invoices Rust sent to Schneider Wallace ostensibly pursuant to the MSA. *See* Doc. 63 at 24-26; Doc. 75.

Rust argues it acted in conformity with the MSA by "performing a substantial amount of work[.]" *See* Doc. 79 at 23. However, Rust's description of the "services" provided for Schneider Wallace shows Rust *did not* proceed in a manner consistent with the MSA. Rust points to Rebecca Blake's testimony to show that Rust performed four services: (1) creating and maintaining the mass tort portal; (2) intake and questionnaire services; (3) call center services; and (4) assisting with the retention of clients. *See* Doc. 79 at 21. If those are the only services that Rust can provide evidence to show it performed, then Rust concedes it vastly *underperformed* within the terms of the MSA. Providing "significant work" is a far cry from acting "in conformity" with the MSA.

With regard to the mass tort portal, Rust admits that it destroyed the portal before filing suit and that same is not recoverable. *See* Doc. 63 at 18; Doc. 67 at 67:9-68:1. Rust failed to address this argument in its response brief and therefore concedes the issue. Because Rust destroyed that evidence, Rust cannot show the portal's functionality actually complied with the terms of the MSA. *See also* Ex. 1 at ¶5 (Ms. Graham was concerned Rust was unable to fulfill the MSA's promised services, "in particular the … function of [the portal].").

With regard to call center services, the MSA required Rust to set up and maintain an *exclusive* call center for Schneider Wallace. *See* Doc. 35-1 at 9. Ms. Blake testified that Rust did not set up or maintain an exclusive call center for Schneider Wallace, *see* Doc. 67 at 25:19-26:13, which did not conform to the MSA.

Rust failed to act in conformity with the MSA in several other areas, for example:

- Rust concedes it never provided settlement, accounting, tax, or lien resolution

services, which were all required by the MSA. *See* Doc. 35-1 at 12-13.

- The MSA required Rust to provide monthly invoices. *See* Doc. 35-1 at 2. Rust did not start billing Schneider Wallace until as late as 2013 for services supposedly performed as early as 2011. *See* Doc. 67 at 183:15-23; Doc. 68 at 57:16-58:8; Doc. 69 at 46, 159, 257, 306, 443, 482.

- Rust failed to address invoices to Steven Stein, even though that was required by the MSA. *See* Doc. 35-1 at 1 ("[I]nvoices shall be sent to the following addresses ... Attn: … Steven Stein"); *see, e.g.,* Doc. 80-8 at 3, 9, 13.

- The MSA required Rust to create websites other than the portal for Schneider Wallace clients. *See* Dkt. 35-1 at 8. Rust concedes it failed to do so.

- The MSA required Rust to perform medical record review services. *See* Dkt. 35-1 at 7-8. Rust concedes it secretly farmed out a large portion of that work to LexiCode when the MSA clearly stated that "*Rust* shall provide" those services.

Accordingly, even under Rust's interpretation of the case law, there is no dispute that the parties did not act in conformity with the MSA.

## III.  Rust failed to address several contentions raised in Schneider Wallace's motion.

It is well established that a party concedes an issue by failing to address it in an opposing brief. *See Cameo Homes, Inc. v. Kraus-Anderson Const. Co.*, No. Civ. 022894 (RHK/RLE), 2003 WL 22867640, at *9 (D.Minn. Dec. 3, 2003); *see also Clifton Power Corp. v. FERC*, 88 F.3d 1258, 1267 (D.C.Cir. 1996); *Johnson v. U.S. Sec. Assocs., Inc.*, No. 5:08-CV-282, 2009 WL 211372, at *2 n. 22 (E.D.Ark. Jan. 28, 2009). Rust failed to address the following issues raised by Schneider Wallace's Motion, and therefore concede

that:

- Rust was continuing to negotiate the terms of the MSA and the "per claim fee" as late as 2013. *See* Doc. 68 at 14-15; Doc. 65 at 44:6-48:3; *see* Doc. 77. Absent the MSA, the parties did not agree on a per claim service fee.

- Rust's invoices lack trustworthiness because, in those invoices, Rust attempted to pass off the work of LexiCode as if that work had been done by Rust personnel, when same should have been listed as an expense line item instead of an hourly service line item. *See* Doc. 63 at 27-28.

- Rust's invoices were not made in the normal course of business because they were not prepared and sent on a monthly basis. *See* Doc. 63 at 27; Doc. 65 at 23:5-24:4; Doc. 67 at 57:16-58:6, 182:23-183:23. Rust employees admitted same was not the normal course of Rust's business. *See* Doc. 63 at 27-28.

- Rust failed to produce independent supporting evidence corroborating the expenses for which Rust sought reimbursement. *See* Doc. 63 at 7, 28.

- Rust cannot prove its produced medical review work product was actually the work product of Rust employees, and not work product of LexiCode. *See* Doc. 63 at 12.

- Schneider Wallace rejected the invoices as an accurate computation of an amount due by refusing to pay the invoices and by communicating objections to those invoices. *See* Doc. 63 at 24-26.

- Schneider Wallace's summary of the value of replacement work damages is accurate. *See* Doc. 63 at 14.

**IV.     Rust failed to meet its evidentiary burden to overcome summary judgment.**

The Court must grant summary judgment where the non-moving party:

> fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Rust argues that it has produced documents showing it "performed work." However, Rust bears the burden of proving the ***reasonable value*** of work allegedly performed. *See, e.g., Bureau of Credit Control, Inc. v. Luzaich*, 282 Minn. 530, 532 (Minn. 1968); *Dunkley Surfacing Co. v. George Madsen Const. Co.*, 173 N.W.2d 420, 423 (Minn. 1970). Rust failed to prove the value of its damages with admissible evidence. *See* Doc. 63 at 7-9, 12-13, 26-30. Rust's invoices are inadmissible and therefore cannot be used to prove Rust's damages. Beyond those invoices, Rust failed to provide any evidence showing the *reasonable value* of its "work and services."

Under requisite evidentiary standards, Rust has failed to put forth evidence to raise a genuine issue of fact regarding its proof of damages. Accordingly, summary judgment in favor of Schneider Wallace is appropriate.

**V.     Rust failed to adequately contest Schneider Wallace's counterclaim damages.**

Rust points to "excerpts" from the deposition of Peter Schneider for the proposition that "many, indeed most, of the time entries for Mr. Ruemke do not" relate to replacement work. *See* Doc. 79 at 18-19. Rust's mischaracterization fails to create a genuine issue of fact.

Peter Schneider never testified that "most" of the time records do not relate to "rework." Instead, Mr. Schneider testified: "I've got a million examples of rework in here if you would like to go over them." *See* Doc. 81-8 at 136:21-22. Rust's counsel declined to address the vast number examples during the deposition. Schneider Wallace, however, provided a summary of that replacement work which Rust failed to address in its response. *See* Doc. 74 at 5-30. As such, Rust fails to raise a fact issue on Schneider Wallace's damages as stated in its motion.

## VI.   Rust's estoppel/waiver argument is improper as a new claim asserted for the first time in a response brief.

Rust argues for the first time in response that Schneider Wallace is estopped from arguing the MSA is unenforceable because it was unsigned. *See* Doc. 79 at 25-26. Schneider Wallace has maintained that the MSA is unenforceable since it filed its Answer and throughout discovery. *See* Doc. 29 at 5, 11 (asserting implied-in-fact claim and statute of frauds defense). Rust's addition of this unpleaded estoppel claim[1] should be disregarded as improper at this stage of litigation. *See McDonald v. City of St. Paul*, 679 F.3d 698, 709 (8th Cir. 2012).

Moreover, there is a stark difference between claiming that some writings within the MSA reflect the substance of promises made by one party to another in an implied agreement, and claiming that every provision within the entire MSA is valid and enforceable as against both parties. Rust made promises to Schneider Wallace about its

---

[1] Rust's estoppel defense was raised only in relation to Schneider Wallace's counterclaims. *See* Doc. 35 at 7.

capabilities that were materially similar to various bullet points found within Appendix A. This does not mean the parties were agreed as to all other provisions within the MSA. Rust's argument attempts to improperly conflate Schneider Wallace's reference to Rust's representations made within the MSA's discrete parts with the whole of the MSA.

## **CONCLUSION**

Schneider Wallace respectfully requests the Court grant summary judgment.

Respectfully submitted,

Dated:  March 28, 2019

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP


/s/ William M. Hogg
Robert K. Shelquist, #21310X
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
rkshelquist@locklaw.com

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS
Todd M. Schneider*
Kyle G. Bates*
2000 Powell Street, Suite 2000
Emeryville, CA 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
kbates@schneiderwallace.com

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS
Peter B. Schneider*
William M. Hogg*
3700 Buffalo Speedway, Suite 300
Houston, TX 77098
Tel: (713) 338-2560

Fax: (866) 505-8036
pschneider@schneiderwallace.com
whogg@schneiderwallace.com

*-admitted *pro hac vice*
**Attorneys for Defendant**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 28, 2019, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ William M. Hogg
William M. Hogg
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
3700 Buffalo Speedway, Suite 300
Houston, Texas 77098
Telephone:  (713) 338-2560
Facsimile:  (415) 421-7105
whogg@schneiderwallace.com