UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 17-4981(DSD/TNL)

Rust Consulting, Inc.,

      Plaintiff,

v.                                              **ORDER**

Schneider Wallace Cottrell
Konecky Wotkyns, LLP,

      Defendant.

    Michael R. Cunningham, Esq., Amy E. Erickson, Esq. and Gray Plant Mooty, 80 South 8th Street, Suite 500, IDS Center, Minneapolis, MN 55042, counsel for plaintiff.

    Peter B. Schneider, Esq., William M. Hogg, Esq. and Schneider Wallace Cottrell Konecky Wotkyns LLP, 3700 Buffalo Speedway, Suite 300, Houston, TX 94608, counsel for defendant.

This matter is before the court upon the motion for partial summary judgment by defendant Schneider Wallace Cottrell Konecky Wotkyns LLP (Schneider Wallace).  Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted in part.

**BACKGROUND**

This business dispute arises out of Schneider Wallace's alleged failure to pay plaintiff Rust Consulting, Inc. (Rust) for services rendered, and Rust's alleged failure to adequately render those services.  The dispute centers on a mass tort litigation project that the parties worked on together from 2011-2014 (the Project).

**I. The Parties**

Rust is a Minnesota corporation specializing in consulting, call-center, data management, claims administration, and settlement services. Compl. ¶ 1; see also Supp. Blake Aff., ECF No. 80, ¶ 6. Schneider Wallace is a California law firm that represents consumers in mass tort cases involving defective medical devices and pharmaceutical products. Compl. ¶ 2; Supp. Blake Aff. ¶ 6.

**II. Master Services Agreement**

In early 2011, Schneider Wallace decided to expand its mass tort practice. Supp. Blake Aff. ¶ 4. Schneider Wallace asked Rust to provide selected client services related to that effort, and claims that Rust represented that it had substantial experience working on mass tort cases.[1] Id. ¶ 6; see also T. Schneider Decl. ¶ 5. There is some dispute as to the accuracy of Rust's representation.

In early 2011, the parties drafted a Master Services Agreement (MSA), which incorporated a Statement of Work, to govern their rights and obligations with respect to the Project.[2] Blake Aff., ECF No. 21-1, ¶ 6. In the Statement of Work, Rust agreed to provide, among other things: client consulting services; call center services and scripting; training and staffing services;

---

[1] Schneider Wallace and Rust first worked together in 2009 on unrelated matters and still work together today. Blake Aff. ¶ 4.

[2] The record does not establish which party drafted the agreement so the court will assume it was jointly drafted.

client website and portal design; data services; customized reporting; client notifications; document capture; settlement distribution and tax services; and lien resolution services. Blake Aff. Ex. A App'x A at 1-2. Schneider Wallace, in turn, agreed to pay Rust $2,500 for each resolved claim and to pay hourly fees for certain services. Id. at 7-8. The Statement of Work establishes criteria to determine when a claim is resolved and requires that Schneider Wallace notify Rust within thirty days of such resolution. Id. The Project was expected to last four years and apply to 3,000 or more cases. Id. at 7.

On March 2, 2011, Steven Stein executed the MSA and Statement of Work for Schneider Wallace. Id. ¶ 7; see also Holland Aff. ¶ 9; Ex. 4. It appears that Rust did not sign the MSA or Statement of Work. Holland Dep. at 19:23-20:4; see also Blake Aff. Ex. A at 2; App'x A-1; Holland Aff. Ex. 4.

The record shows that the first case under the Project began in May of 2011. Supp. Blake Aff. ¶ 9. Rust started billing Schneider Wallace for its work in the spring of 2012. Holland Aff. Ex. 2. On November 12, 2013, Todd Schneider, a Schneider Wallace partner, sent an email asking Rust to send him a copy of "our contract" so he would not have to find it in his file. Holland Aff. Ex. 5 at 3. In response, Rust indicated that it had an unsigned MSA and Statement of Work. Id. at 2. Todd Schneider did not respond to Rust's disclosure. See id. At no time before this

3

litigation, did Schneider Wallace claim that the MSA or Statement of Work were not effective or binding on the parties.

## III. Disputed Charges

Rust asserts that it provided adequate services under the MSA and maintained, among other things, a claims call-center, intake services, consulting, data management services, form processing, and reporting services for the Project.[3] Supp. Blake Aff. ¶¶ 18-21. It also asserts that it created an online client portal to facilitate claim processing.[4] Id. ¶ 20.

Rust did, however, use third-party vendors to perform some of the work. Id. ¶ 17. For example, Rust used FedEx and other metered services to send client notifications and deliveries, and used third parties for medical-record searches and other document retrieval. Id. Rust also used third-party vendor LexiCode to review medical records. Id. Schneider Wallace contends that it was unaware that Rust used third parties to perform some of the work and did not know that a third party had access to its clients' medical records. Vogel Dep. at 47:13-16; 202:8-10; see also T. Schneider Decl. ¶ 8. Schneider Wallace was also unaware that Rust billed it for third-party work because the invoices did not include itemized billing information. Vogel Dep. at 34:24-35:2; 35:22-

---

[3] The Project included nine separate mass tort cases. Supp. Blake Aff. Exs. 7-15.

[4] The portal has since been archived, and cannot be retrieved. Blake Dep. at 67:9-68:1.

4

36:3; 50:11-16; see also T. Schneider Decl. ¶ 14. Schneider Wallace further claims that Rust failed to perform all work required under the MSA, namely, settlement distributions, website design, and lien resolutions. T. Schneider Decl. ¶ 9.

On March 28, 2012, Rust sent Schneider Wallace the first of nine invoices. Supp. Blake Aff. ¶ 17; Exs. 7-15. In late 2013, Schneider Wallace raised concerns that Rust had overcharged for certain services and expenses. Holland Aff. ¶ 5. Rust adjusted the invoice totals to address those concerns. Id.; T. Schneider Decl. ¶ 12. Rust also offered to waive half of the resolved claim fees over the next three years.[5] Holland Aff. Ex. 5 at 4-7. The parties were unable to resolve the dispute at that time, however, and Rust continued to invoice Schneider Wallace throughout 2013 and into February 2014. Id. Ex. 2. Rust denies that Schneider Wallace ever complained about the quality of its work. Supp. Blake Aff. ¶ 35.

In 2015, Schneider Wallace offered to settle the ongoing dispute between the parties for $75,000. Holland Aff. Ex. 3 at 2. Rust declined the offer. Id. Schneider Wallace then claimed that "Rust utterly failed to deliver what it had promised" and that Schneider Wallace had "incurred significant expense because of Rust's conduct." Id. To date, Schneider Wallace has not paid Rust

---

[5] Rust also indicated that the resolved claim fee was $2,000, not the $2,500 set forth in the MSA. Holland Aff. Ex. 5 at 6.

for any of its work on the Project.  T. Schneider Decl. ¶ 10.

Schneider Wallace asserts that it had to use an attorney to complete Rust's work and to correct its mistakes.  Id. ¶ 15.  Schneider Wallace claims that the attorney spent significant time reviewing client intake documents and analyzing medical records.  Id. ¶ 15; see also P. Schneider Decl. ¶ 7.  Schneider Wallace paid the attorney $1,198,313.  Ruemke Decl. Ex. A.

Rust disputes that the attorney's work is related to the Project.  See Erickson Aff. Ex. 2.  Rust also argues that Schneider Wallace's figure does not reflect its actual expenses.

**IV.  This Action**

On October 9, 2017, Rust commenced this action in Hennepin County District Court raising breach of contract, account stated, quantum meruit, and accounting claims.  It seeks $323,746.22 in damages related to the unpaid invoices, an accounting of how many claims Schneider Wallace resolved, and pre- and post-judgment interest.

Schneider Wallace timely removed and raised negligent misrepresentation, tortious interference with business expectancy, implied-in-fact contract, and breach of the covenant of good faith and fair dealing counter-claims.  Schneider Wallace seeks $1,198,313 in damages.  Schneider Wallace now moves for partial summary judgment.

**DISCUSSION**

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient ....").

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists – or cannot exist – about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 324.

7

## II. Breach-of-Contract Claim

Schneider Wallace first moves for summary judgment on Rust's contract claim. Schneider Wallace argues that the MSA which is "effective upon execution," was never signed by Rust and therefore is unenforceable. ECF No. 21-1 ¶ 1. The court disagrees.

"It is well established that the party seeking to enforce a written agreement need not have signed the agreement if he agreed to the contract and acted in conformity therewith." Taylor Inv. Corp. v. Weil, 169 F. Supp. 2d. 1046, 1056 (D. Minn. 2001) (citing Poser v. Abel, 510 N.W.2d 224, 228 (Minn. Ct. App. 1994)); see also Asbestos Prods., Inc. v. Healy Mech. Contractors, 235 N.W.2d 807, 809 (Minn. 1975) ("[W]here the parties have assented to all the essential terms of the contract and proceed to perform in reliance upon it, the mere reference to a future contract in writing will not negative the existence of the present, binding contract.").[6] This is true even if a party's signature could be considered a condition precedent to a contract's enforcement because "Minnesota law provides that one party to a contract may waive a condition precedent which exists for that party's own benefit." Taylor, 169 F. Supp. 2d at 1056.

---

[6] Schneider Wallace's attempts to distinguish Taylor are unpersuasive. The fact that Taylor involved a signature requirement for one party only is an immaterial distinction under the circumstances.

Here, Rust as the non-signing party seeks to enforce the MSA. Rust undisputably acted in conformity with the MSA while undergoing work for the Project. Thus, even if Rust's signature were a condition precedent, it waived that condition by performing under the contract. See id. The declaration of Rust's former vice president, Elizabeth Graham, does not affect the court's determination. Graham stated that, to the best of her knowledge, Rust did not sign the agreement because it was concerned that it could not "perform all of the functions" promised in the MSA. Graham Decl. ¶ 5. But it is undisputed that Rust did in fact perform under the MSA and considered the contract to be in full force and effect, as did Schneider Wallace. Under these circumstances, the MSA was a valid and enforceable contract between the parties. The court must therefore deny summary judgment on this claim. Whether Rust performed adequately under the MSA (in other words, whether Rust breached the MSA) is separate question reserved for the jury.

**III. Account Stated and Quantum Meruit Claims**

Because there is an express contract between the parties, Rust's quantum meruit claim is no longer viable and must be dismissed. See Taylor, 169 F. Supp. 2d at 1060 ("The existence of an express contract between parties precludes recovery under theories of quasi-contract, unjust enrichment, or quantum meruit."). The same is true for Rust's account stated claim. See

9

HomeStar Prop. Sols, LLC v. Safeguard Props., LLC, 370 F. Supp. 3d 1020, 1030 (D. Minn. 2019) (citations omitted) ("[B]ecause an account stated claim is merely 'an alternative means of establishing liability for a debt other than a contract claim,' Minnesota courts have barred an account stated claim when ... a written contract governs the disputed account.").

**IV. Accounting Claim**

Rust seeks an accounting of how many claims Schneider Wallace resolved and a computation of how much it is owed in resolved claim fees. Schneider Wallace argues that this claim fails because Rust cannot demonstrate that Schneider Wallace agreed to the resolved claim fee. The court disagrees.

Under Minnesota law, "the right to an accounting is the right to have the defendant account for funds or other property." Welk v. GMAC Mortg., LLC, 850 F. Supp. 2d 976, 994 (D. Minn. 2012). Accounting is an equitable remedy, which "compels the disclosure of money or property held or obtained by a particular party but which belongs to another." Id. (internal citation omitted).

As discussed, the parties entered into a valid contract which included a resolved claim fee. The jury must determine whether that fee was changed, waived, or unearned. As a result, summary judgment on this claim is denied.

### V. Damages

Schneider Wallace lastly moves for summary judgment on Rust's damages. Genuine issues of material fact preclude summary judgment on this aspect of the case.

To the extent Schneider Wallace also moves for summary judgment on certain aspects of its counterclaims, the motion is denied.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [ECF No. 61] is granted in part as set forth above.

Dated: July 31, 2019

            s/David S. Doty
            David S. Doty, Judge
            United States District Court